H. M. HANKS ET AL. V. CITY OF PORT ARTHUR.

No. 5285. Decided April 6, 1932.
(48 S. W., 2d Series, 600.)

*Holland & Cousins,* of Beaumont, for plaintiffs in error.

The City of Port Arthur is not exempt from its common law liability for damages resulting from injuries to persons because of defects in its sidewalks existing through the negligence of the city, but is liable as at common law for its negligence in permitting defects to exist in its public sidewalks which cause injuries to others. City of Galveston v. Posnainsky, 62 Texas, 118; City of Tyler v. Texas Employers Insurance Association, 283 S. W., 931; (S. C., 288 S. W., 409, and authorities therein cited); Vanderford v. Houston, 286 S. W., 571.

*J. W. O'Neal,* City Attorney, of Port Arthur, for defendant in error.

The Legislature has a right to exempt cities from liability for their negligence in failing to keep their streets in repair and the wisdom of such legislation is not a matter which should properly concern the courts. Lee v. City of Dallas, 267 S. W.,

1014; Williams v. City of Galveston, 90 S. W., 505, and cases therein cited.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

This case is before us by writ of error. The suit was brought by H. M. Hanks and wife, Jennie Hanks, against the City of Port Arthur, for personal injuries to the latter.

While walking on a cement sidewalk in a thickly settled portion of the City of Port Arthur, Mrs. Hanks stepped into a hole or depression in the sidewalk, fell, and suffered injuries. The condition which caused her to fall is set forth in the pleading as follows:

"That the hole or depression in said sidewalk was about twelve (12) inches wide, twenty-eight (28) inches long and eight (8) inches deep and extended from near the edge of said sidewalk toward the opposite side thereof. That at the time of plaintiff's injuries said hole, or depression, in sidewalk was entirely covered with grass, weeds and trash and its depth and condition could not be plainly seen nor could it be noticed or known by the casual passer along said sidewalk that there was hidden beneath said grass a depression or hole in the walk. That said excavation or hole had been and remained in said position and place since the building of said sidewalk or for a great length of time, more than two years before the injuries sustained by plaintiff and that the defendant in the exercise of ordinary care should have known of the dangerous condition of said sidewalk and of the existence of said hole and depression therein at the time of plaintiff's injuries and long prior thereto and in the exercise of ordinary care for the protection of pedestrians along said sidewalk should have repaired the same.

"That at the time of her injuries said plaintiff was sixty-five (65) years old, active, able-bodied, mentally and physically strong, her eye-sight and vision and ability to protect herself from injury was impaired by the usual and customary infirmities of age to a person of her age and her vision and eye-sight were largely impaired to the extent that she could not readily determine the character or nature of objects such as the defect in said sidewalk, its condition or that there was a defect, hole or excavation. That she was proceeding along said sidewalk in a careful and prudent manner and that her injuries were received without any fault or negligence on her part but were brought about solely by the negligence, carelessness and omis-

sions of duty on the part of the defendant, its officers and servants.

"That the sidewalk and place at which the said plaintiff received her injuries is now, and was at the time of said injuries, within the corporated limits of the defendant city; it was a public sidewalk in the corporate limits of said city and was, and is, under the control, protection and care of the defendant city, its officers and representatives."

The petition contained the usual allegations of negligence on the part of the city, and freedom from negligence on the part of the injured petitioner. The city answered by general demurrer and a special exception to the effect that plaintiffs in error had nowhere in their petition alleged that the specific defect in the sidewalk claimed as causing the injuries was actually known to any of the commissioners of the city by personal inspection for a period of at least twenty-four hours prior to the occurrence of the injuries, nor did said petition allege that the attention of any one of the commissioners of the city had been called to the defect in the sidewalk by notice in writing for a period of at least twenty-four hours prior to the accident, and that proper diligence had not been used to rectify the defect after the actual knowledge or served notice.

The section of the city charter made the basis of the exceptions was as follows:

"Sec. 8: Damage suits against the City. * * * The City of Port Arthur shall never be liable on account of any damage or injury to person or property arising from or occasioned by any defect in any public street, highway or grounds, or any public work of the city, unless the specific defect causing the damage or injury shall have been actually known to one of the Commissioners by personal inspection for a period of at least twenty-four hours prior to the occurrence of the injury or damage, or unless the attention of one of the Commissioners shall have been called thereto by notice thereof in writing at least twenty-four hours prior to the occurrence of the injury or damage, and proper diligence has not been used to rectify the defect after actually known or notice served as aforesaid."

The trial court sustained the exceptions, and upon refusal of plaintiffs in error to amend dismissed the suit. This judgment the Court of Civil Appeals affirmed. 8 S. W. (2d) 331.

■ The section of the charter quoted contains an absolute inhibition against recovery of damages for injuries, not only to persons, but to property, "arising from or occasioned by any

defect in any public street, highway or grounds, or any public work of the City," unless one of the commissioners of the city *"by a personal inspection for a period of at least twenty-four hours prior to the occurrence of the injury or damage"* actually knows of the specific defects which causes the damage, or unless the attention of one of the commissioners shall have been called to the defects *"by notice thereof in writing at least twenty-four hours prior to the occurrence of the injury or damage."*

We think the provisions of the charter quoted void, because in violation of the Bill of Rights, sections 13 and 17, article 1, of the State Constitution. The first section named is the Due Process Clause, and will be hereafter quoted. Section 17, in so far as here involved, reads as follows:

"No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money."

■■ It is well settled that this section of the Constitution not only prevents the taking of the property of a citizen for public purposes in the physical sense, until paid for, but that it comprehends such damages as may be peculiar to or suffered by the property involved. Its effect is very well stated by Judge Hamilton in the case of City of Amarillo v. Tutor, 267 S. W., 697, 699. In that case the court had before it a statute which attempted to confer upon home rule cities the power to exempt themselves from liability for damages, and an ordinance of the city exempting it from any and all liability and damages for any injury, or injuries, to property, caused by or arising from the acts and pursuits enumerated therein, which included damages for personal injuries, as well as for damages to property. The court held in the opinion referred to that the statute and the ordinance passed pursuant to it were unconstitutional, as authorizing the taking of property without adequate compensation, in violation of section 17 of article 1 of the Constitution, above quoted. Concerning the matter, the opinion declares:

"All that portion of the ordinance which says that the city of Amarillo shall be and is hereby declared exempt from any and all liability and damages for any injury or injuries to * * * property caused by or arising from the acts and pursuits enumerated therein is not only inconsistent with, but is directly contrary to, section 17 of article 1 of the Constitution of Texas, which provides:

" 'No person's property shall be taken, damaged or destroyed for, or applied to, public use without adequate compensation being made, unless by the consent of such person. * * *' "

"Any damage or injury peculiar to one's particular property, and not suffered by it as a result of the construction of the public work in common with other properties in the same community, is ground for a judgment fixing liability against the city as well as against a railroad or any other person or corporation doing work of a public nature. Any interference, by the construction of works, with any right, public or private, legally enjoyable by the owner or occupant of property used in connection with such property, and giving an additional market value to such property separate from the use to which any particular owner might put it, forms a legal ground for compensation, guaranteed by the Constitution, if by reason of such interference the property as such is lessened in value. Gulf Coast & S. F. Ry. Co. v. Fuller, 63 Texas, 467; Texas & N. O. Ry. Co. v. Goldberg, 68 Texas, 685, 5 S. W., 824; Texas & Sabine Ry. Co. v. Meadows, 73 Texas, 32, 11 S. W., 145; 3 L. R. A., 565; Fort Worth & Rio Grande Ry. Co. v. Jennings, 76 Texas, 373, 13 S. W., 270, 8 L. R. A., 180; Gainesville, Henrietta & Western Ry. Co. v. Hall, 78 Texas, 169, 14 S. W., 259, 9 L. R. A., 298, 22 Am. St. Rep., 42; Baugh v. Texas & N. O. Ry. Co., 80 Texas, 56, 15 S. W., 587; Texas & Pacific Ry. Co. v. Edrington, 100 Texas, 496, 101 S. W., 441, 9 L. R. A. (N. S.), 998; Ostrom v. City of San Antonio, 94 Texas, 523, 62 S. W., 909. The Legislature itself is powerless to destroy directly by statute the rights which the city ordinance purports to wipe out, and the Legislature is equally powerless to authorize the city to destroy such rights. They are guaranteed by the Constitution of our state."

■ It is obvious that if the notice provision of the charter of the City of Port Arthur is to be given effect in accordance with its. terms, recovery could not be had by anyone whose property was destroyed, damaged, overflowed, or submerged by constructions of the city itself, whether in street, highway, grounds, or public works, unless prior to the injury the notice prescribed in the charter had been given. It is plain, therefore, that in so far as damages due to a taking or destruction of property by the city, without compliance with section 17 of article 1 of the Constitution, the notice section of the charter cannot be sustained.

The case of the City of Waco v. Roberts, post, 42 S. W.

(2d) 577, is a very fair illustration of the application of the constitutional provision. In that case the City of Waco had changed the channel of Waco Creek, by reason of which and certain embankments which it constructed the property of Roberts was seriously damaged, and its use practically destroyed. In that case the charter section involved was one requiring notice of claim for damages to be filed as a prerequisite to maintaining suit. We held that while such a notice might be applicable to ordinary claims for damages against the city, it could not be required as a prerequisite to maintain a suit for the taking or destruction of the plaintiff's property in that case. The basis of that opinion is that the initial wrong of the city in making its constructions in such manner as to damage or destroy the plaintiff's property, within itself, perforce of the Constitution, gave rise to the cause of action, and no intervening condition of liability could be imposed by the Legislature or by the city. The notice provision in the instant case is equally futile if applied to facts similar to the Waco case, a state of facts which could as easily have existed in Port Arthur as in Waco.

■ The notice provision, if applied to such a state of facts, as is disclosed by the record in the Waco case, would in effect declare that unless the plaintiff gave notice of the change of the channel of the creek and other defective conditions to the city twenty-four hours in advance of his injury, or if perchance some commissioner had not personally seen the change twenty-four hours before the injury, no suit could be maintained, even though the plaintiff's property was destroyed,—or, as in the Waco case, seriously damaged. The Constitution admits of no such limitation. When a city violates the Constitution to the damage or injury of a complaining party, a constitutional cause of action arises, and the Legislature is powerless to make provision for a notice of the type here involved. The Constitution, sec. 17, art. 1, having fixed the method by which a city may take or damage private property without liability for tort, the constitutional method is exclusive, and the Legislature is without power to prescribe any other method to accomplish the same purpose. City of Waco v. Roberts, supra; City of Houston v. Kleinecke, 26 S. W., 250; City of Fort Worth v. Ashley, 197 S. W., 307; City of Dallas v. Shows, 212 S. W., 633; City of Dallas v. Shows, 172 S. W., 1137, 1139; 12 Corpus Juris, p. 750 and notes; Parks v. West, 102 Texas, 11; Page v. Allen, 98 Am. Dec., 272.

It is true that in the case before us the question of taking

property in violation of the Constitution is not in issue, but the validity of the charter section may be raised, and if void for any reason, it can not be enforced in this case. 12 Corpus Juris, p. 765; People v. McBride, 123 Am. St. Rep., 82, 84 N. E., 865; State v. Bengsch, 70 S. W., 710 (Mo.); State v. Cumberland Club, 188 S. W., 583 (Tenn.).

We pass now to section 13 of article 1 of the Constitution, which in part reads:

"All courts shall be open, and every person for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law."

This court and other state courts have from time to time held that notice provisions analogous to the one here involved could have no application to injuries to persons or property brought about by negligent constructions made by the city itself, or under its direction, where otherwise a cause of action would exist. White on Negligence of Municipal Corporations, secs. 284, 285; McQuillin on Municipal Corporations (2nd ed.), vol. 7, secs. 2997, 3001; City of Houston v. Isaacks, 68 Texas, 116; Willis v. San Antonio, 280 S. W., 569; Klein v. Dallas, 71 Texas, 280; City of Houston v. Kleinecke, 26 S. W., 250; Still v. Houston, 66 S. W., 76; Dallas v. Cooper, 34 S. W., 321. The first authority cited thus states the rule:

"Sec. 284. Notice not required of obstructions made or authorized by the city itself.—As already seen, the doctrine under discussion does not apply so as to require proof of notice of obstructions or defects made by the city itself,—that is to say, by its officers, agents, or contracts, and under its authority; but in all such cases the city it liable for its primary negligence in making or leaving the defect; or, if the theory of notice is resorted to, then notice of the defect is conclusively presumed. Thus, a municipal corporation is bound to take notice of the character of repairs made by it in a sidewalk, and of the condition of the walk when repaired, whether safe or unsafe. For example, a city is chargeable with notice of the existence of a dangerous obstruction in one of its streets, placed there by one of its officers, so as to dispense with the necessity of giving it express notice of its existence. The rule is the same where the defect is the result of the negligence of contractors under the city. As already seen, the duty of the city to make and keep its streets reasonably safe for travel is primary, and it cannot devolve this duty upon one with whom it contracts to do the necessary work, so as to exonerate itself from liability for his negligence in performing it; but it is answer-

able for defects made or left in its streets by its contractor, exactly as it is for defects made or left there by its own proper officers. Hence, no notice to a city of defects in its streets is necessary to render it liable for injuries resulting from such defects, where they are the result of its own contractors in making public improvement."

In section 285 of the same authority declares:

"No notice need, therefore, be shown of a defective construction of a sidewalk, bridge, or any portion of a street or highway in a city. It is a conservative statement of the rule *is* to say that where a public improvement constructed by a city is unsafe by reason of its negligent construction, and its defects are not latent, it is not necessary to show that the municipality had notice of such unsafe condition in order to recover for injuries sustained thereby. The rule is the same where the defect results from the negligence of a contractor, since the fact of the contract charges the city with such notice. The fact that a sidewalk was originally constructed by an abutting owner does not relieve a municipal corporation from liability for injuries caused by a defect therein. In accordance with the main principle, proof of notice was held unnecessary where a city constructed a drain which obstructed a sewer and caused an overflow; where the displacement of a sewer cover causing injury to a pedestrian was the result of negligence of the city in the original construction of the sewer; and where the defect was the sinking of the earth over a negligently filled pipe trench in a street."

The cases have not stated the basis of the conclusion, but the real reason therefor is that a provision requiring notice to a city of defects in its constructions, existing by virtue of its own negligent acts, is an unreasonable abridgement of the right to obtain redress for injuries, and amounts to a denial of due process under the section of the Constitution quoted above.

In this case we are unable to say that the notice section of the charter was not intended to apply to negligent constructions of the city itself, for the reason that its terms make it applicable to *"any damage or injury"* to person or property *"arising from or occasioned by any defect in any public street, highway or grounds, or any public work of the city."* On the contrary, its broad terms make it applicable to defects and constructions due to affirmative acts of negligence on the part of the city. It is, therefore, unreasonable, and violates the due process clause of the Constitution.

We have just seen that a notice provision of this character could not be made to apply to property taken or destroyed in violation of section 17 of article 1 of the Constitution. The notice section before us, as just shown, *does* apply to *"any damage or injury,"* and its necessary effect, in view of its plain terms, is to make it also apply to cases of that character. It is obvious that in this respect also it violates the due process clause.

We think it violates the due process clause for still another reason. Since the injury to Mrs. Hanks in this case is a justiciable one, for which damages may be recovered, is it a part of due process to require that before the injury she should have given notice of the hole in the sidewalk, which brought about the injury? She says, in effect, that she did not know that the hole was there, and did not see it. Can it be "due process" to say that, although she did not see the defect, and did not know of its existence, yet, before she can recover for the city's wrongful act (if it was wrongful), she must have notified the city of the defect twenty-four hours before she received her injuries?

Here assuming, for the purpose of this discussion, that the hole in the sidewalk was due to an actionable wrong on the part of the city, it is obvious that notice of the defect, to be made by one ignorant of its existence, twenty-four hours before the subsequent injury, is unreasonable. A different question would be presented if the notice requirement applied only to those who had knowledge of the defect which brought about the injury. To require notice of those who know nothing of a defective condition, is to impose an unreasonable condition precedent to recovery, and which is, we believe, beyond the legislative power. What has been said as to personal injuries applies with equal, if not greater, force to the destruction of property.

The vice in the notice section of the charter may be illustrated still further. As written it applies to all persons who may be upon the streets,—to children, to the blind, and to the aged and infirm,—all of whom have the right to use the sidewalks and the streets of a city. White on Municipal Negligence, secs. 473, 352, 655, 658. Are we to say that a small child running an errand, or a small boy selling newspapers to help make the family living, who is injured by reason of a defective sidewalk, due to the negligence of the city, or by reason of otherwise actionable negligence of the city, cannot recover because the infant, or someone for him, has not notified one of the city commissioners twenty-four hours before the accident of

the existence of the defect? Would that be reasonable? Is the requirement of a thing impossible from an infant, or one incapacitated for any other reason, due process? We think not; and yet it is a condition precedent to a recovery,—it is a part of the process prescribed by the city charter of Port Arthur. Obviously the charter requirement in respect to the notice here involved is unreasonable, and if unreasonable, it violates the due process clause of the Constitution. White on Municipal Negligence, sec. 668; 12 Corpus Juris, p. 1291, sec. 1105; Riggs v. Martin, 41 Am. Dec., 103.

■ In discussing the authorities to be hereafter named, it should be borne in mind that there lies at the basis of conflicting decisions distinct, separate, and conflicting conceptions of the basis of liability on the part of municipalities for negligent construction or maintenance of their streets and sidewalks. All the authorities agree that where there is such a liability, a city can only be held liable for failure to exercise ordinary care, or, as commonly expressed, for negligence in its constructions where the acts complained of are actually acts of the city, or those acting by its authority, or in privity with it; and that where the defects or causes of injury shown are not traceable to direct acts of the city, or those for whose conduct it is liable, but rather to its failure to inspect and ascertain the existence of defects not due to its own active negligence, or the negligence of those for whom it is responsible, then that the city must have had notice of the defects, actual or constructive, and have had a reasonable time and opportunity for removing them. White on Muniicipal Negligence, secs. 255, 460; McQuillin on Municipal Corporations (2nd ed.), vol. 7, sec. 2996. The rules thus briefly stated appear to apply regardless of the original conception which the jurisprudence of the particular state may entertain as to the basis of recovery for injuries due to municipal negligence.

■ We pass now to the point of conflict. The authorities from some of the states hold that at common law there was no liability for injuries due to the negligence of a municipality in the construction and maintenance of its streets and sidewalks, and that all damages which might be awarded for injuries incident to such negligence were recoverable purely by virtue of the statute; and since purely statutory, the Legislature could limit the recovery in amount, or could specify and permit the recovery upon such conditions as its wisdom might dictate. White on Municipal Negligence, secs. 200 to 204, 459; au-

thorities *post;* McQuillin on Municipal Corporations (2d ed.), vol. 7, secs. 2900, 2903, 2904, 2905. On the other hand, in other jurisdictions, including Texas, the court held that the right to recover against a city for actionable negligence for defects in its streets and sidewalks is based on the common law, and re-quires no statute to proclaim it. White on Municipal Negli-gence, sec. 458; McQuillin on Municipal Corporations (2d ed.), vol. 7, secs. 2900, 2901, 2902; Galveston v. Posnainsky, 62 Texas, 118; Galveston v. Barbour, 62 Texas, 172. As to the power of the Legislature to deny recovery in common law ac-tions against municipalities for negligence, we find it unneces-sary to express an opinion, since no attempt has been made in this state to abrogate what our courts have determined was. the common law liability of municipalities. The notice pro-vision before us does not attempt to destroy the common lia-bility imposed by the general laws of the state, but only to regulate its application or define the rights of those who may avail themselves of the general laws. As to any constitutional cause of action for the destruction of property, the provision is clearly void, as we have previously stated. We think it like-wise void as to common law rights, because, as we have stated,. it works an unreasonable abridgement of the right to obtain redress for injuries, and is therefore violative of the due pro-cess clause. Only those authorities which like our own hold that a city is liable for its negligence under the common law can be regarded as of value in this discussion. We now direct attention to authorities of this character.

In the case of Born v. City of Spokane, 68 Pac., 386, the court held a notice section of the charter of a city, quite sim-ilar to the one here involved, unreasonable and void. The pro-vision there read:

"That the City shall `not be liable for any damages for in-juries sustained * * * in consequence of any street * * * or sidewalk being out of repair, unsafe dangerous or obstructive * * * *unless actual notice of such defect or want of repair shall have been given to the Superintendent of Streets or the City Council twenty-four hours before such injury is sustained.''* (Italics ours).

In holding this provision of the charter of the City of Spo-kane void, because unreasonable, the Supreme Court of the. State of Washington in part said:

"It is contended that, inasmuch as such notice was not given,. the plaintiff cannot recover. It seems to us that this provision of the charter, upon its face, is unreasonable, and that to hold

it good would be to couple a remedy with a frequently impossible condition. The person injured naturally could not give notice to the city before the injury, for in such an event he would be held to have had notice of the dangerous condition, and would be debarred from recovery. And if notice had been given by anyone else, he would have no knowledge of such notice, and would be unable either to plead or prove it. As was said by this court in Durham v. City of Spokane (filed March 12, 1902) 68 Pac., 383, in discussing the reasonableness of a charter provision somewhat of this character: 'Manifestly, unless it is to be held that the city can by this form of enactment prevent a recovery against itself for personal injuries, it cannot, by requiring claims for injuries to be presented within a given time, prevent a recovery for troubles arising from such injuries which do not develop within the given time. But it is not the rule that a city may say whether or not it shall be held for personal injuries caused by its neglect of duty. Charter provisions of the character in question, whether enacted by the legislature, or, as in the present case, by the city itself, are to be upheld only so far as they are reasonable and tend to the due administration of justice. When such provisions so far depart from reasonableness as to amount to a denial of justice, they are void.' The right to prosecute a claim for personal injuries is a common-law right, which has been sustained by this court in a long line of causes, extending from Sutton v. City of Snohomish, 11 Wash., 24, 39 Pac., 273, 48 Am. St. Rep., 847, down to the present time. Such cases have also held the city chargeable with notice, and if it is true that it is not the rule that the city may say whether or not it shall be held for personal injuries caused by its neglect of duty, as was said in the case just above cited, this provision must be held to be unreasonable and void."

In the case of the City of Tulsa v. Wells, 191 Pac., 186, the Supreme Court of the State of Oklahoma made a similar holding with reference to a similar provision in the charter of the City of Tulsa. In that case the injured party was a bright, studious, and industrious boy, fourteen years of age, who was injured by reason of defects in the streets of the city. The charter provided that the city should not be liable for injury to persons or property arising from or occasioned by any defect in any public street, unless the specific defect causing the damage or injury should have been actually known to the mayor or city council by personal inspection for a period of at least twenty-four hours prior to the occurrence of the injury or

damage. The Supreme Court held that this provision was unreasonable and void. In part the court said:

"Concerning that provision of the charter, counsel for the defendant in error say in their brief:

"' We think a mere reading of this portion of section 9 shows on its face it is unreasonable and, therefore, unconstitutional and void. If this provision of the charter is upheld, a person can never recover from a municipality for injuries caused by a defect in the street unless twenty-four hours before he gets hurt he goes either to the city engineer or the mayor and tells them that he expects to get hurt, or unless he is fortunate enough to find some one who called upon the mayor or the city engineer twenty-four hours before he got hurt and notified them of the defect. We do not know the author of this provision nor why it was written, but we think this practically imposes an impossibility upon a litigant. The court adopted the view of the foregoing section that actual knowledge for a period of twenty-four hours either on the part of the mayor or the city engineer was not necessary, but that the constructive notice would be sufficient. * * *'

"With this contention of counsel we are in perfect accord, and additional reasons might be given in this connection. But we are not without authority to sustain this conclusion."

In the opinion the Supreme Court then quotes what we have quoted from the case of Born v. City of Spokane, and adds:

"We think, as was said in the Washington case, supra, that this provision of the Tulsa charter so far departs from reasonableness as to amount to a denial of justice, and is therefore void."

There are authorities which uphold notice provisions quite similar to the one involved in the instant case, but in so far as these authorities have been examined by us they are from states where the courts hold that actionable negligence against municipalities can only exist by virtue of the express provisions of some statute, or by necessary implication therefrom, and that, therefore, the Legislature had plenary power to permit recovery in such instances and upon such conditions as its judgment might dictate. Forsyth v. Saginaw, 158 Mich., 201, 122 N. W., 523; Schigley v. Waseca, 106 Minn., 94, 118 N. W., 259; Harmon v. City of South Portland, 121 Me., 1, 115 Atl., 419; McNally v. City of Cohoes, 53 Hun., 202, 6 N. Y. Supp., 842; Ryerson v. Abington, 102 Mass., 526; Grambs v. City of Birmingham, 202 Ala., 490, 80 So., 874; see also 12 Corpus Juris, p. 1280, sec. 1103, and cases in note 45.

There may be decisions from some common law states which uphold notice provisions similar to the one before us, but whether so or not, we are convinced that the provision had its original in the New England States, where the contrary doctrine as to municipal liability prevailed (McQuillin on Municipal Corporations (2nd ed.), vol. 7, sec. 2903), and that its unreasonable provisions can not be sustained in this state so long as cities are to be held liable under the common law for actionable negligence. Some of our Courts of Civil Appeals have sustained notice provisions similar in some respects to the one before us. Others have noted the stringent terms of such charter sections, as has this court, without finding it neecssary to determine the constitutional question. Houston v. Isaacks, 68 Texas, 116, 118; Wiggins v. Fort Worth, 299 S. W., 468, 473; Still v. Houston, 66 S. W., 76, 77. In the instant case, however, we are compelled to determine the validity of the notice section involved. If this section of the charter of Port Arthur is to be sustained, we should be compelled to eliminate from it the principal things which it was no doubt enacted to cover;—that is to say, we should be compelled to eliminate from it every case of injury or damage to persons or property which might arise from the direct and active negligence of the city with reference to its streets, highways, grounds, and public works,—and also to strike from its terms all claims for damages which might arise by reason of property taken for or by the city in violation of section 17 of article 1 of the Constitution. We also think, for reasons previously stated, that we should be compelled to hold that the section could not apply in so far as it purports to require notice of defects chargeable to the city before injury from those who had no knowledge of them, or who by reason of infancy or misfortune could not know of them. The plain terms, however, of the notice section do not permit us to make these eliminations, nor could we say that the Legislature would have enacted this section of the charter had it understood that the full import of its provisions was not effective. The charter provision here involved plainly violates section 17, article 1 of the Constitution, and section 13, article 1, the due process clause, and is therefore void.

The judgments of the trial court and the Court of Civil Appeals are both accordingly reversed, and the cause is remanded to the district court for another trial.